Matter of Michael BB. v Kristen CC. (2019 NY Slip Op 04521)





Matter of Michael BB. v Kristen CC.


2019 NY Slip Op 04521


Decided on June 6, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 6, 2019

526913

[*1]In the Matter of MICHAEL BB., Petitioner,
v
KRISTEN CC., Appellant.

Calendar Date: May 3, 2019

Before: Garry, P.J., Egan Jr., Lynch, Clark and Rumsey, JJ.


John B. Casey, Cohoes, for appellant.
Vida L. McCarthy-Cerrito, Schenectady, attorney for the child.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from an order of the Family Court of Schenectady County (Blanchfield, J.), entered June 14, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and for permission to temporarily relocate with the parties' child.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of a child (born in 2011). Pursuant to a December 2016 order, the mother and the father shared joint legal and physical custody of the child. In May 2017, the father commenced this proceeding seeking permission to temporarily relocate with the child to Texas for a period of two years so that he could attend a US Army Intersective Physician Assistant Program (hereinafter the program). Following a three-day fact-finding hearing and a Lincoln hearing, Family Court granted the father's petition, continued the parties' joint legal custody and awarded parenting time to the mother during school breaks and all but two weeks during the summer. The mother appeals.[FN1]
Initially, "[i]t is well settled that a custodial parent's proposed relocation provides the change in circumstances that is
ordinarily necessary to modify an existing custody order" (Matter of BB.Z. v CC.AA., 166 AD3d 1334, 1335 [2018]; see Matter of Hoppe v Hoppe, 165 AD3d 1422, 1423 [2018], lvs denied 32 NY3d 912, 913 [2019]). The party seeking relocation "bears the burden of establishing by a preponderance of the evidence that the proposed move would be in the child's best interests" (Matter of Lynk v Ehrenreich, 158 AD3d 1004, 1005 [2018] [internal quotation marks and citation omitted], lv denied 31 NY3d 909 [2018]; see Matter of Tanya B. v Tyree C., 168 AD3d 1154, 1154 [2019]). Whether relocation is appropriate requires consideration of the totality of the circumstances, including "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of [*2]the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's li[ves] may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements" (Matter of Tropea v Tropea, 87 NY2d 727, 740-741 [1996]; see Matter of Hoppe v Hoppe, 165 AD3d at 1424). This Court accords deference to Family Court's credibility assessments and findings of fact, and will not disturb a relocation determination if we find it to be supported by a sound and substantial basis in the record (see Matter of Lynk v Ehrenreich, 158 AD3d at 1005; Matter of Hempstead v Hyde, 144 AD3d 1438, 1439-1440 [2016]).
At the outset, it bears noting that the father's request was limited to a two-year relocation period, an unusual circumstance. At the hearing, both the mother and the father testified, as well as the father's paramour and the paramour's mother. The child enjoys loving and positive relationships with both parents and with the paramour, each of whom is involved in the child's school, extracurricular activities and medical appointments. The father and the mother exercised nearly equal parenting time with the child. Both acknowledged that the other was a good parent and offered to preserve the child's relationship with the other following the father's proposed relocation by permitting liberal telephone contact and visitation during school breaks and summer recess. Further, notwithstanding some evidence of conflict, the parents are able to effectively communicate regarding the child and her numerous activities.
As to the father's desire to relocate, he testified that he is an active duty military service member and that his attendance at the program will allow him to earn a greater income — to the benefit of the child — as the military equivalent of a physician assistant, starting at $71,000 and rising to $150,000 after five years. Although the father acknowledged that other programs may be available in New York, the program in Texas will allow him to earn his degree free-of-charge and without incurring debt. Further, while the father attends the program, he will be able to provide the child with living accommodations and attendance at schools on the military base where the program is located. The father acknowledged that nearly all the child's extended family resides in New York, including both sets of grandparents, but emphasized that the relocation would be temporary, and that he plans to return to New York after completing the two-year program.
As to the quality of the child's relationship with the father, the father's testimony included a lengthy list of various sports, nature activities, educational programs and events that he actively participates in with the child during his parenting time. Upon relocation, he asserted that the child could continue to engage in such activities and even begin new programs at an equestrian center close to the military base. The father further testified that his participation in the program would not reduce his time available to spend with the child, as the program schedule would allow him to continue to end his day at 4:30 p.m. during weekdays, with most weekends free.
The paramour testified that she has been actively involved in the child's life since the child was one year old and will be moving with the father to Texas. In the event the child is permitted to relocate, the paramour asserted that she would leave her employment as a preschool teacher to provide the child's afterschool care. In this regard, the paramour testified that over the years, she has been primarily responsible, at the father's direction, for setting up the child's play dates and medical appointments and for providing transportation for the child during the father's parenting time. Although the paramour had previously had some issues communicating with the mother, she testified that she would work to address these issues and build better communication with the mother.
The mother raised significant and substantial concerns about the child's relocation based upon the fact that she will necessarily "miss out" on the child's day-to-day life, and that the child will be able to spend much less time with her grandparents and extended family. Nevertheless, the mother also acknowledged in her testimony that she did not believe that the child's well-being would be adversely impacted by the temporary relocation.
In determining that relocation was in the child's best interests, Family Court emphasized the father's active use of his parenting time. The father was highly engaged with the child, participating in multiple activities. The mother's testimony in this respect, in contrast, was generalized and undetailed. Moreover, the mother — who is employed part time in the food service industry — frequently worked in the evenings, even during her parenting time, thus requiring her to leave the child with the maternal grandparents. She explained that if the child lived with her full time and did not relocate with the father, she would be required to rely on her parents more frequently for child care. We further note that the mother's fiancé — with whom she resides — did not testify, and that the mother indicated that he has rarely supervised the child and that she would not rely upon him to provide child care during her work hours.
Family Court's thorough written decision demonstrates that its determination was based upon the proper consideration of the relevant factors. In addressing the need to preserve and strengthen the child's relationship with the mother, the court appropriately awarded the mother liberal electronic communication and significant parenting time with the child, and further required that the father pay for the child's transportation to New York. Accordingly, we discern no basis upon which to disturb the determination (see Matter of Tropea v Tropea, 87 NY2d at 739; see also Matter of Lynk v Ehrenreich, 158 AD3d at 1007; Matter of Scheffey-Hohle v Durfee, 90 AD3d 1423, 1426-1427 [2011], appeal dismissed 19 NY3d 876 [2012]).
Finally, the mother argues, and the attorney for the child agrees, that Family Court should have expressly retained continuing exclusive jurisdiction over this matter. In our view, it is highly significant that the father specifically asserted that the requested relocation was not intended to be permanent, and that he promised to return to New York to again reside with the child, in proximity to the mother and the child's extended family members, following the completion of his program. We further note the passage of time since the Family Court order. In short, this is the child's home, and should remain so; although we find that the record evidence supports the determination that a short-term relocation serves the child's best interests, for this reason we further find that specifically retaining jurisdiction relative to any potential future issues was also appropriate. The mother's remaining contentions, to the extent not explicitly discussed herein, have been examined and found to be without merit.
Egan Jr., Lynch, Clark and Rumsey, JJ., concur.
ORDERED that the order is modified, on the facts, without costs, by reversing so much thereof as denied respondent's request for Family Court to explicitly retain continuing exclusive jurisdiction; said request granted; and, as so modified, affirmed.



Footnotes

Footnote 1: The father did not file a brief on appeal.